Edward Carlson
Law Office of Edward Carlson
43 West 43rd St., suite 243
New York, NY 10036-7424
+1 (917) 714-0189
ed@edwardcarlsonlaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EAST TOWING AND SALVAGE, INC. D/B/A SEA TOW PUERTO RICO,<br><br>      Plaintiff,<br><br>-against-<br><br>BLUE OCEAN 1 LLC AND HECTOR HOYOS,<br><br>      Defendants. | 19 CV _____<br><br>**VERIFIED COMPLAINT IN ADMIRALTY** |

Plaintiff East Towing and Salvage Inc. d/b/a Sea Tow Puerto Rico ("Sea Tow"), by their below-signed counsel, for their Verified Complaint in Admiralty against Defendants Blue Ocean 1 LLC and Hector Hoyos, upon information and belief alleges as follows:

**JURISDICTION**

1. This is a case involving admiralty and maritime jurisdiction, 28 U.S.C. §1333, and constitutes an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Procedure and Rule B of the Supplemental Rules for Admiralty and Maritime Claims.

2. In addition, this Court has jurisdiction over this case pursuant to the Federal Arbitration Act, 9 U.S.C. § 8, as Sea Tow's claims arise in admiralty, and this action is brought for libel and seizure of the property of the Defendant Hector Hoyos pursuant to the usual course

of admiralty proceedings, and for this court to enter its decree upon a future arbitration award in favor of Sea Tow.

3. This dispute arises from the breach of two identical maritime contracts of salvage that contain the following arbitration clause:

> This Agreement shall be governed by and construed in accordance with the Federal Maritime Law of the United States. Any dispute arising out of this Agreement shall be referred to arbitration in the United States in accordance with the applicable Arbitration Rules of the Society of Maritime Arbitrators, Inc. The Arbitrator(s) shall be familiar with maritime salvage. Any award made hereunder may include interest, attorney's fees and costs, and shall be final and binding. For the purpose of enforcement the Award may be entered for judgment in any court of competent jurisdiction.

## PARTIES

4. East Towing & Salvage, Inc. d/b/a Sea Tow Puerto Rico (Sea Tow") is a business entity formed under the laws of Puerto Rico.

5. Defendant Blue Ocean 1 LLC is a business entity formed under the laws of Delaware in 2008 and administratively dissolved by the Delaware Department of State in January 2018 for failure to appoint a registered agent.

6. Defendant Hector Hoyos is an individual domiciled in Connecticut and owner of the M/Y Enterprise, a 72-foot yacht presently located in Puerto Rico ("the yacht").

7. Upon information and belief, Defendant Hoyos was the sole member and director of Defendant Blue Ocean prior to that entity's cancellation in 2018.

## UNDERLYING EVENTS

8. On September 19- 20 2017, Hurricane Maria struck Puerto Rico.

9. Hurricane Maria was a category 5 hurricane that entered Puerto Rico through the east coast of the island where Puerto del Rey Marina, the facility where Defendant Hoyos docked his yacht, was located when the storm made landfall.

10. Puerto Rico felt the fury of 175 mph winds, and 10-plus inches of rain fell in less than 24 hours. The combination of wind and heavy rainfall caused the sinking of hundreds of vessels, including the M/Y Enterprise.

11. After the hurricane, the M/Y Enterprise was completely submerged at its slip. The vessel was damaged beyond repair, making it unsalvageable and of no value whatsoever, thereby becoming a wreck.

12. The salt water intrusion throughout the yacht and its engines, transmissions, parts, generators, and other appurtenances caused irreparable damage to the yacht. Consequently, the yacht was rendered unnavigable without repairs that far exceeded the yacht's value.

13. Despite receiving requests for assistance from hundreds of other vessels, Sea Tow, the only marine salvage company on the east coast of Puerto Rico, where the vast majority of the recreational yachting on the island is located, wasted no time and spared no expense in dispatching personnel and resources to the scene to stop the spilling of pollutants, remove already spilled pollutants from the marina, and ensure the M/Y Enterprise was lifted as soon as possible.

14. Sea Tow worked for three weeks on the oil and contaminant spill prevention and response and then focused on the wreck removal.

15. On September 29, 2017, Sea Tow and the Captain of Defendants' vessel executed two New York Society of Maritime Arbitrators MARSALV agreements whereby Sea Tow agreed to provide wreck removal and spill and contaminant services to the yacht.

16. Pursuant to the first MARSALV, the Captain of Defendant Hoyos' yacht agreed to pay Sea Tow a fixed wreck removal fee of $102,997.56 to remove the yacht from its slip at the marina and tow it to be hauled out and placed in dry storage.

17. Sea Tow and the Captain of Defendants' yacht entered a second MARSALV for oil spill and containment services to be billed at "time & material" pursuant to Sea Tow's rate sheet.

18. For sixteen consecutive days in September and October 2017, Sea Tow provided Defendants' yacht with oil spill and containment services, and then re-floated the wreck, removed it from its slip, and towed it to the marina's travel lift for haul out from the marina.

19. Sea Tow submitted its invoices for those salvage services to Defendants, totaling $139,582.69 ($102,997.56 for the wreck removal and $36,585.13 for the spill/containment services).

20. Despite Sea Tow's repeated demands for payment, those invoices remain unpaid, and Defendants' failure to pay those invoices constitutes a breach of the underlying maritime contracts.

21. As set forth above, disputes arising under the MARSALV agreement shall be resolved in arbitration under the applicable rules of the Society of Maritime Arbitrators.

22. On May 8, 2019, Sea Tow served Defendant Hoyos and his local counsel in Puerto Rico with a demand for arbitration in accordance with the MARSALV terms, pursuant to which Sea Tow informed Defendants that it was seeking the full amount owed plus interest and costs and attorneys' fees for the arbitration.

23. The total amount claimed by Sea Tow against Defendants, and subject to the continuing accrual of interest and the actual costs and fees for arbitration, is **$139,582.69**, plus $25,000 in interest and $25,000 in costs and attorneys' fees.

24. Despite receiving due demand for arbitration, Defendants have ignored Sea Tow's demand for same.

25. The arbitral proceedings have now commenced with the appointment of an arbitrator and Sea Tow's local counsel in Puerto Rico is preparing the claim documents for filing in the arbitration.

26. Sea Tow reserves its rights to make any motions, petitions, and/or applications to any appropriate court for available relief with respect to the arbitration agreement, including (without limitation) to compel Defendants to arbitrate, to obtain security, and/or to recognize, confirm and enforce any resulting awards against Defendants.

## ALTER EGO RELATIONSHIP AMONG DEFENDANTS

27. Pursuant to maritime law, Defendant Hoyos is liable for the debts of the M/Y Enterprise and its nominal owner, Blue Ocean 1 LLC, of which, upon information and belief, Defendant Hoyos is the sole owner and member.

28. Multiple factors establish the existence of an alter ego relationship between Defendant Blue Ocean 1 and Defendant Hoyos.

29. Upon information and belief, Defendant Hoyos is the sole owner and member of Defendant Blue Ocean, a sole-purpose entity which is undercapitalized, as evidenced by that entity's inability and/or unwillingness to pay for the wreck removal and oil spill and containment services provided to Defendant Hoyos' yacht. Defendants have also refused to pay the marina where the vessel is located for land storage charges, forcing the marina to file suit against

Defendants in Puerto Rico State Court in a case titled *Marina PDR Operations LLC v. Hector Hoyos-Aliff*, Case No. FA2018cv00338, which remains pending.

30. Defendants Hoyos and Blue Ocean also failed to observe corporate formalities, as evidenced by State of Delaware Division of Corporation filings which establish that Blue Ocean repeatedly failed to appoint a registered agent, resulting in agent resignations in 2010 and 2017 and administrative dissolution in 2018. Blue Ocean also failed to file annual reports with the State of Delaware.

31. Further, Defendants Hoyos and Blue Ocean failed to pay the annual $300 tax assessments to the Delaware Department of State, Division of Corporations, as evidenced by documents published online by the State of Delaware, thereby further establishing that Defendants Hoyos and Blue Ocean failed to observe basic corporate formalities with respect to maintenance of the LLC.

32. As evidenced by an abstract of title obtained from the US Coast Guard's National Vessel Documentation Center dated June 6, 2019, Hoyos has historically treated the yacht as his own, despite transferring nominal title to Blue Ocean, an entity that he alone controls.

33. In May 2002, Defendant Hoyos and his then wife, Maria Lopez, acquired the yacht from its previous owner. In September 2002, Hoyos and Lopez conveyed their 100 percent interest in the yacht to Hoyos Adventures, Inc. for $1.00. Upon information and belief, Hoyos Adventures, Inc. was never incorporated. In June 2003, Hoyos Adventures, Inc. conveyed its 100 percent interest in the yacht to Defendant Hoyos for $1.00. Finally, in July 2008, Defendant Hoyos conveyed 100 percent interest in the yacht to the now defunct Blue Ocean for $1.00. The low consideration for the transfer of the yacht further evidences that at all material times Defendant Hoyos owned and controlled the yacht.

34. Further, as evidenced by the abstract of title for the yacht, after Defendant Hoyos transferred ownership of the yacht from himself to Defendant Blue Ocean in 2008, he routinely mortgaged the yacht as collateral for loans in excess of the value of the yacht itself.

35. More specifically, Defendant Hoyos, after transferring ownership of the yacht from himself to Blue Ocean, mortgaged the vessel for $1.1 million to an investment fund in Manhattan called Metropolitan EIH8 LLC, whereby the fund obtained a preferred mortgage on the yacht valued at more than $400,000 the value of the yacht itself.

36. Per Coast Guard records, that initial $1,100,000 mortgage was discharged in February 2012.

37. A few months later, in May 2012, Defendants Hoyos again leveraged the M/Y Enterprise with another preferred mortgage for $1,000,000, issued to an individual named Robert Ferran, who upon information and belief is a real estate professional in New York.

38. That mortgage was subsequently discharged in September 2014.

39. Sea Tow asserts, upon information and belief, that Defendant Hoyos leveraged Defendant Blue Ocean and the yacht repeatedly to access capital for personal use and investment in his hi-tech enterprises.

40. Defendant Hoyos' over-burdening of Defendant Blue Ocean with debt bears multiple hallmarks of an alter ego relationship between Defendants Hoyos and Blue Ocean.

41. Hoyos alone exerted sole control over Blue Ocean for the sole purpose of obtaining loans from others, which loans considerably exceeded the value of the yacht itself, and which Hoyos used for personal benefit and to fund his business ventures that upon information and belief were wholly unrelated to the yacht or Blue Ocean.

42. Overleveraging Defendant Blue Ocean for purposes that upon information and belief are wholly separate from the operation and maintenance of the vessel further evidences inequitable conduct by Defendant Hoyos.

43. As such, Sea Tow respectfully submits, it would be inequitable for Defendant Hoyos to shield himself behind the fictitious façade that he and Blue Ocean are separate, distinct entities when the entity failed to observe the most basic corporate formalities (appoint resident agents, file annual reports, pay annual dues), and because Hoyos has treated the vessel as his own for over a decade, including leveraging Blue Ocean with substantial amounts of debt in excess of the value of the yacht for purposes upon information and belief that are wholly separate from the operation of the yacht itself.

## FIRST CAUSE OF ACTION

### (breach of maritime contracts against Blue Ocean and Hector Hoyos)

44. Paragraphs 1 through 43 of this complaint are repeated and re-alleged as if the same were set forth here at length.

45. Defendants Blue Ocean and Hector Hoyos breached their obligations under the salvage agreements.

46. Plaintiff hereby has sustained damages, as best as can now be estimated, in the amount of, at least, $189,582.69.

## SECOND CAUSE OF ACTION

### (alter ego liability against Blue Ocean and Hector Hoyos)

47. Paragraphs 1 through 46 of this complaint are repeated and realleged as if the same were set forth here at length.

48. Defendant Blue Ocean is a mere alter ego of Defendant Hector Hoyos in that Hoyos completely dominates and controls Blue Ocean and treated its sole asset – the M/Y Enterprise – on a collective basis as evidenced by the U.S. Coast Guard Abstract of Title establishing that the yacht served as over $2,000,000 collateral in order for Defendant Hoyos to obtain funding for purposes unrelated to Blue Ocean and the yacht.

49. Further, Hoyos has for over a decade treated the yacht as his own, and has transferred its title to and from the entities he controls for little to no consideration at all.

50. Defendant Hoyos is therefore liable to Sea Tow as alter ego of Blue Ocean in the amount of, at least, **$189,582.69.**

## RULE B ATTACHMENT

51. Paragraphs 1 through 50 of this complaint are repeated and realleged as if the same were set forth here at length.

52. Pursuant to the terms of the MARSLAV contracts, disputes are to be resolved in arbitration. Plaintiff Sea Tow therefore expressly reserves its rights to arbitrate the merits of the underlying dispute and brings this action to obtain quasi in rem jurisdiction over Defendants Blue Marine and Hoyos and to obtain security for damages, plus interest and the costs of the arbitration.

53. Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purposes of Rule B of the Supplemental Rules for Admiralty or Maritime claims, but Plaintiff is aware that Defendants have, or will shortly have, property subject to attachment within this District.

54. Specifically, Hoyos LLC maintains an office within this District. Plaintiff believes that Hoyos LLC holds assets of Defendant Hector Hoyos that can be attached in this District.

55. Veridium Ltd. maintains an office within this District. Plaintiff believes that Veridium Ltd. holds assets of Defendant Hector Hoyos that can be attached in this District,

including, but not limited to, patents, royalties, licensing fees, usage fees, and/or dividends pursuant to Defendant Hoyos' previous ownership of a company called Hoyos Labs Corp. that was Veridium's corporate predecessor, and his assignment of patents issued in his name to Veridium.

56. Eyelock LLC maintains an office in this District. Plaintiff believes that Eyelock holds assets of Defendant Hector Hoyos that can be attached in this District, including, but not limited to, patents, royalties, licensing fees, usage fees, and/or dividends pursuant to Defendant Hoyos' previous ownership of a company called Global Rainmakers that was Eyelock's corporate predecessor, and his assignment of patents issued in his name to Eyelock.

57. The amount Plaintiff Sea Tow seeks to attach against Defendants pursuant to Rule B of the Supplemental rules for Admiralty and Maritime Claims, inclusive of the principle amount of $139,582.69, plus interest thereon and costs and attorneys' fees for the arbitration, equals at least **$189,582.69**.

**WHEREFORE**, Plaintiff prays as follows:

1. That process in due form of law according to the practice of this Court may issue against Defendants, citing them to appear and answer the foregoing, failing which default may be taken;

2. That if Defendants cannot be found within this District pursuant to Supplemental Rule B all tangible or intangible property of Defendants up to and including the sum of **$189,582.69** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, patents, royalties, licensing fees, dividends, usage fees, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, cargo and/or vessels, of, belonging to, due, held or being transferred to, from, or for the benefit of Defendants or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein so as to obtain quasi in rem jurisdiction over the Defendants and to serve as security for subsequent enforcement of any arbitral awards and judgments;

      3.      That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to an order compelling the Defendants to arbitrate and/or for the recognition and enforcement of any award or judgment entered against the Defendants, or any of them, in the Society of Maritime Law arbitration proceedings; and

      4.      That the Court grants such other, further and different relief as may be just, proper and equitable.

Dated: New York, New York
       September 17, 2019

                                       Law Office of Edward Carlson
                                       Attorney for Plaintiff
                                       East Towing and Salvage Inc. d/b/a Sea Tow
                                       Puerto Rico

                          By:    /s/ Edward Carlson
                                 Edward Carlson

                                 43 West 43rd St., suite 243
                                 New York, NY 10036-7424
                                 +1 (917) 714-0189
                                 ed@edwardcarlsonlaw.com

## ATTORNEY VERIFICATION

Edward Carlson, pursuant to the provisions of 28 USC § 1746, declares and states as follows:

1. I am an attorney with the Law Office of Edward Carlson, attorneys for Plaintiff in this action, I am admitted to practice before this Court, and I make this verification on behalf of Plaintiff.

2. I have read the foregoing complaint and know the contents thereof, and the same are true to the best of my knowledge, information and belief. The sources of my information and the ground for my belief are communications and information received from Plaintiff and their representatives, together with the examination of papers relating to matters in suit.

3. The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a non-New York business entity as to which I am informed that no officer or director is presently within this District.

4. Plaintiff has not made any prior attachment applications with respect to the matters in suit.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
September 17, 2019

/s/ Edward Carlson
Edward Carlson

Law Office of Edward Carlson
43 West 43rd St., suite 243
New York, NY 10036-7424
+1 (917) 714-0189
ed@edwardcarlsonlaw.com

**DECLARATION**

Edward Carlson, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am an attorney admitted to practice before this Court with the Law Firm of Edward Carlson, attorney for Plaintiff, and I am familiar with the facts of this matter.

2. To the best of my information and belief, the above-named Defendants cannot be found within this District as defined by the relevant State and Federal Rules of Civil Procedure.

3. I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entity Database for the corporate Defendant. This database contained no record of the corporate Defendant having authority to do business in New York. I also searched additional, online directories for New York and found no current listings for either Defendant in this District.

4. I am also unaware of any general or managing agents within this district for the Defendants.

5. For the foregoing reasons, it is my informed belief that the Defendants cannot be served with process within the District and that none of the Defendants can be "found" within the District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

6. I therefore respectfully request, on behalf of Plaintiff Sea Tow, that the Court issue an order directing the Clerk of the Court to issue Process of Maritime Attachment and

Garnishment with respect to the Defendant's property within the District.

Dated: New York, New York
September 17, 2019

                                  /s/ Edward Carlson
                                  Edward Carlson

                                  Law Office of Edward Carlson
                                  43 West 43rd St., suite 243
                                  New York, NY 10036-7424
                                  +1 (917) 714-0189
                                  ed@edwardcarlsonlaw.com

## DECLARATION IN SUPPORT OF AN ORDER APPOINTING
## A PERSON TO SERVE PROCESS

Edward Carlson, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am an attorney admitted to practice before this Court with the Law Office of Edward Carlson, attorney for Plaintiff.

2. I make this Declaration in support of Plaintiff's application, pursuant to the provisions of Rule B(1)(d)(ii) of the Supplemental Rules for Admiralty or Maritime Claims, for an Order appointing Edward J. Carlson or any other person instructed by the Law Office of Edward Carlson in addition to the United States Marshal to serve Process of Maritime Attachment and Garnishment on the garnishes listed in the process, together with other possible garnishees.

3. The persons who would be instructed by the Law Office of Edward Carlson to serve such process are over 18 years of age and are not parties to this action.

` 4. Plaintiff desires to serve Process of Maritime Attachment and Garnishment on the garnishees promptly so that Plaintiff will be fully protected against the possibility of not being able to satisfy any arbitral award against Defendants (or any subsequent judgment[s] confirming such award[s]).

5. Plaintiff respectfully requests, for the foregoing reasons, that the Court appoint Edward Carlson or other persons instructed by the Law Office of Edward Carlson to serve the Process of Maritime Attachment and Garnishment upon the garnishees listed in the Process,

together with any other garnishees that Plaintiff learns may hold assets of Defendants.


Dated: New York, New York
       September 17, 2019

                                        /s/ Edward Carlson
                                        Edward Carlson

                                        Law Office of Edward Carlson
                                        43 West 43rd St., suite 243
                                        New York, NY 10036-7424
                                        +1 (917) 714-0189
                                        ed@edwardcarlsonlaw.com